# MAZZOLA LINDSTROM LLP

Hanoch Sheps
hanoch@mazzolalindstrom.com
646-216-8126

October 19, 2021

Via ECF
Hon. Paul G. Gardephe
Thurgood Marshall Courthouse
40 Foley Square
New York, NY 10007

Response to Plaintiff's Counsel's Request for Pre-Motion Conference on Issue of Alternate Service, and Defendant Carmichael Gallery's Further Request for Pre-Motion Conference

Re: *International Systems Group, Inc. v. Seth Carmichael, Carmichael Gallery, LLC, et al.*
Index No.: 21-CV-6301-PGG

Dear Judge Gardephe:

We represent the defendants and continue to make a limited appearance (in behalf of defendant Carmichael Gallery, LLC). We hereby object to plaintiff's request for substitute service on Seth Carmichael, individually. As discussed herein, plaintiff failed to meet its threshold requirement of reasonably attempting to effect service on Mr. Carmichael or justify judicial intervention. We hereby make an independent request for a pre-motion conference predicated on the lack of subject matter jurisdiction, or, alternatively, to dismiss certain of plaintiff's claims.

## The Court Should Reject Plaintiff's Request for Alternate Service and Not Intervene

The request for alternate service should be denied because plaintiff failed to make any showing of the need for judicial intervention. Plaintiff failed to meet the threshold requirement of reasonably attempting to effect service on Mr. Carmichael. Plaintiff also failed to even take preliminary steps to effect service through the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, despite the representation that Mr. Carmichael does not live in the U.S.[1]

The decision whether to allow alternate methods of serving process under FRCP 4(f)(3) is committed to the sound discretion of the court. *Gang Chen v. China Green Agric., Inc.*, No. 1:20-cv-09232 (MKV), 2021 U.S. Dist. LEXIS 11243, at *6 (S.D.N.Y. 2021). In exercising this discretion, however, the court can and should "impose a threshold requirement for parties to meet before seeking the court's assistance." *Ryan v. Brunswick Corp.*, No. 02 Civ. 0133EF, 2002 U.S. Dist. LEXIS 13837, 2002 WL 1628933, at *2 (W.D.N.Y. 2002). In fact, before the court will authorize alternate service pursuant to Rule 4(f)(3):

> [t]he moving party must make some showing of the need for judicial intervention … [which has] frequently been described as follows: (1) a showing that the

---

[1] It is inconsequential whether plaintiff or its counsel previously communicated with Mr. Carmichael via email insofar as proper service and due process are concerned. *Kowalski v. Anova Food, LLC*, No. 11-00795 HG-RLP, 2012 U.S. Dist. LEXIS 112693, at *9 (D. Haw. 2012) (declining to authorize alternate service under Rule 4(f)(3) where plaintiffs failed establish that they had attempted Hague service. Even when a defendant has "actual notice, the manner of service of process must substantially comply with Rule 4 requirements") (citing *Crane v. Battelle*, 127 F.R.D. 174, 177 (S.D. Cal. 1989)).

plaintiff has reasonably attempted to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's intervention is necessary.

*Gang Chen*, 2021 U.S. Dist. LEXIS 11243, at *6; see also *Export-Import Bank v. Asia Pulp & Paper Co.*, Ltd., No. 03 Civ. 8554, 2005 U.S. Dist. LEXIS 8902, 2005 WL 1123755, at *4 (S.D.N.Y. 2005) (holding that plaintiff be required "to show that they have reasonably attempted to effectuate service on the defendant(s) and that the circumstances are such that the district court's intervention is necessary.").

This requirement, although not expressly provided by Rule 4(f)(3), "is necessary in order to prevent parties from whimsically seeking alternate means of service and thereby increasing the workload of the courts." *Ryan*, 2002 U.S. Dist. LEXIS 13837, 2002 WL 1628933, at *2. "Effectively, this rule requires the moving party first to follow—or attempt to follow—international agreements and law in recognition of principles of comity and not to whimsically seek an alternate means of service." *Gang Chen*, 2021 U.S. Dist. LEXIS 11243, at *6. Plaintiff has made no attempt at Hague service, so cannot show that judicial intervention is necessary.

As previously represented, Mr. Carmichael does not live in the U.S., and has not in at least five years. A meeting with plaintiff's principal years ago in Florida has no jurisdictional significance. This court should reject plaintiff's request for alternative service and not intervene at this time.

### Plaintiff Failed to Oppose Enforcement of the Mandatory Forum Selection Clause

Plaintiff cannot dispute that the forum selection clause in the so-called "Second Sale" is mandatory, not permissive.[2] This clause, at a minimum, bars plaintiff from bringing the claims arising out of the second sale in federal court. Any ambiguity arising from the inartful reference to the Supreme Court of Florida must be construed against the contract's drafter – the plaintiff.[3] Nevertheless, we argue below that the court may not exercise jurisdiction over the defendants even after a limited dismissal of claims pursuant to the forum selection clause.

### Plaintiff Failed to Articulate How the Fraud Claims are Not Duplicative

Plaintiff's assertion that it alleged breaches extrinsic to the contract is of no moment. The buyers were aware of and agreed not to resell the artworks. At all relevant times, plaintiff knew and intended the artworks to be sold to collectors, not directly to either named defendant.

---

[2] Contrary to opposing counsel's assertion, the undersigned did not overlook that the so-called "First Sale" was subject to a separate agreement. The forum selection clause in the "Second Sale" was contained in **a** contract, though defendants acknowledge that it was not **the** (only) agreement upon which plaintiff's claims are predicated.

[3] *Herrera v. Katz Communs, Inc.*, 532 F. Supp. 2d 644, 647 (S.D.N.Y. 2008) (citing *Andy Warhol Found. for Visual Arts, Inc. v. Federal Ins. Co.*, 189 F.3d 208, 215 (2d Cir. 1999) (explaining that ambiguity is construed against the contract's drafter, because the drafter is responsible for the ambiguity).

MAZZOLA LINDSTROM LLP

## The Court Lacks Subject Matter Jurisdiction Because the $75,000 Threshold is Neither Supported nor Supportable by Factual Allegations. In the Alternative, the Complaint Should be Dismissed for Failure to State a Cause of Action

It is black letter law that a plaintiff must allege facts that, if true, would establish a right to damages. Here, however, the plaintiff alleges two kinds of damages – harm to its reputation, and injury from the breach of the right of first refusal. There is thus a further basis for a pre-motion conference that was not set forth in our first letter.

### i)     Damage to Reputation is Not Compensable

Plaintiff suggests in paragraphs 6, 38, 63, 119 and 125 of the complaint that its injuries are reputational. Reputational injury is not compensable in a claim for breach of contract or for fraud, and thus cannot provide the jurisdictional anchor to meet the $75,000 threshold.

Damages to reputation generally are not recoverable in a breach of contract action under New York law. *Smith v. Positive Prods.*, 419 F. Supp. 2d 437, 453 (S.D.N.Y. 2005) (citing *Karetsos* v. *Cheung,* 670 F. Supp. 111, 115 S.D.N.Y. 1987, precluding recovery for damage to plaintiff's reputation as a result of the breach); *MacArthur Constr. Corp.* v. *Coleman,* 91 A.D.2d 906, 457 N.Y.S.2d 530, 531 (1st Dep't 1983) (damage claim in breach of contract action for injury to plaintiff's reputation in the industry is not actionable); *Dember Constr. Corp.* v. *Staten Island Mall,* 56 A.D.2d 768, 392 N.Y.S.2d 299 (1st Dep't 1977) (claim seeking damages to plaintiff's reputation arising out of breach of contract is not actionable).

Damages for reputational injury are available only in exceptional cases – not alleged here – such as when the plaintiff proves "specific business opportunities lost as a result of its diminished reputation." *I.R.V. Merch. Corp.* v. *Jay Ward Prods., Inc.,* 856 F. Supp. 168, 175 (S.D.N.Y. 1994); *Karetsos,* 670 F. Supp. at 115. "Absent specific proof, damages for loss of reputation are too speculative to be recovered under contract law." *Saxton Communications Group v. Valassis Inserts,* 1995 U.S. Dist. LEXIS 17037, No. 93-388, 1995 WL 679256, at *2 (S.D.N.Y. 1995).

Damages for reputational injury are also unavailable in a fraud action. *Chevron Corp. v. Donziger*, 2013 U.S. Dist. LEXIS 105878, at *6-8 (S.D.N.Y. 2013). New York law allows only awards for pecuniary out-of-pocket losses in fraud cases. The losses must be the direct, immediate, proximate result of the misrepresentation. The damages must also be independent of other causes. *Saleemi v. Pencom Sys.*, 99 CIV. 667 (DLC), 2000 U.S. Dist. LEXIS 6645, at *18-19 (S.D.N.Y. 2000) (citations omitted). Reputational harm cannot be pled based on mere surmise. *Rager v. McCloskey,* 305 NY 75, 81 [1953]. This is particularly true in a fraud case where reputational damages are alleged. *Rather v. CBS Corp.*, 68 A.D.3d 49 (1st Dept 2009), lv to appeal denied, 13 N.Y.3d 715 (2010).

### ii)    The Alleged Right of First Refusal Has No Value

The alleged failure to tender an artwork to plaintiff in violation of a contractual right of first refusal could not possibly have caused damage, and, quite noticeably, plaintiff fails to even allege the value of the ROFR, or the loss sustained. Quite manifestly, plaintiff cannot do so. Absent a liquidated damages provision for a breach of a ROFR, it is a loss without injury.

Assume, (1) for sake of analysis, that Jack sells a widget to Jill for $1 million, with a three-year ROFR. Assume that in year two Jill finds a willing arm's-length buyer for the widget, who is willing to pay $1.5 million for it, but that Jill fails to first offer the widget back to Jack for $1.5 million.

(2) Damages are measured at the time of the breach. So in the hypothetical, at the time of the breach, the widget had a fair market value (FMV) of $1.5 million, and could have been resold by Jack, had he been able to purchase it then, at that day's FMV – *i.e.*, $1.5 million.

Ergo, (3) mathematically, Jack suffered no loss, because the fair market value on the date of breach is $1.5 million, so there cannot be damages from the lost opportunity to purchase it back for $1.5 million and resell it that same day – the day on which damages are measured – for $1.5 million. That is, had Jack purchased it back for $1.5 million two years post sale, he would have only been able to sell it at that time for $1.5 million. It's a wash: The buy-back was to be at fair market value; the hypothetical resale by which to measure damages was also $1.5 million.

Finally, (4) it is meaningless to say that Jack could have held it for another year and resold it for $1.75 million, because the FMV already has factored in the likelihood of its appreciation in value.

As for whether the option itself has value, the plaintiff has failed to allege that a reasonable businessman would be willing to pay money for an option exercisable at fair market value, much less that such option has an economic value of more than $75,000.

This is not a case of specific performance, wherein the $75,000 threshold could be satisfied by showing that a thing that the plaintiff asks the court to have returned to him has a value of over $75,000.  See *Am. Standard, Inc. v. Oakfabco, Inc.*, 498 F. Supp. 2d 711, 717 (S.D.N.Y. 2007) (holding that the amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation); see also, *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1078 (11th Cir. 2000) (the value of the requested relief is the monetary value of the benefit that would flow to the plaintiff if injunctive or declaratory relief were granted).

Here, plaintiff knew and intended that the artworks were to be sold to collectors, and not kept by the gallery. Plaintiff has not even alleged that the artworks remain in the gallery's possession. Rather, plaintiff has referred in the complaint (¶¶ 25 & 46) to "undisclosed buyers" being in possession of the artworks, not the defendants. Thus, because specific performance is not a possible remedy, the $75,000 threshold must be satisfied by other means.

The complaint does not set forth a legal or mathematical basis for a finding of damages in excess of the $75,000 threshold. The defendant gallery submits that this pleading deficiency is incurable; therefore, it is respectfully submitted that the complaint must be dismissed.[4]

\*\*\*

---

[4] There are other pleading deficiencies, including, for example, an allegation that the plaintiff would have repurchased the work at fair market value had it been offered to him.

MAZZOLA LINDSTROM LLP

  By making this request, defendant Carmichael Gallery LLC specifically reserves all rights and claims, as well as all jurisdictional and affirmative defenses available to it, as well as to defendant Seth Carmichael, who has not yet been served. We thank the court for its consideration of the foregoing.

Very truly yours,<br>
Mazzola Lindstrom LLP<br>
<br>
Hanoch Sheps

To: *All counsel of record via ECF*

MAZZOLA LINDSTROM LLP